IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| Darryl Thornton,<br><br>*On behalf of himself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Valor Technical Cleaning, LLC;<br><br>Defendant. | Case No. 3:25-CV-00385<br><br>Judge Walter H. Rice<br><br>Jury Trial Demanded |

# FIRST AMENDED COLLECTIVE ACTION COMPLAINT

1. Darryl Thornton (hereinafter, "Thornton"), on behalf of himself and similarly situated individuals, brings this action against Defendant Valor Technical Cleaning, LLC ("Defendant"). Thornton seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Thornton and similarly situated individuals overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., the Ohio Minimum Fair Wage Standards Act, O.R.C. 4111.01, *et seq*., the Ohio Prompt Pay Act, Ohio Rev. Code § 4113.15 (the "PPA"), per Ohio Rev. Code § 2307.60, and other relevant state laws.

2. Defendant is a technical cleaning company that provides technical cleanup and restoration services.

3. Defendant employed Plaintiff and other similarly situated employees as Operations/Travel Technicians ("Technicians").

4. Defendants' Operations/Travel Technicians are employed by Defendants as Technician Trainees ("Trainees") prior to being able to work as Technicians.

5. Defendants have repeatedly and willfully violated the FLSA and the PPA by failing to pay Trainees and Technicians 1.5 x their regular rate of pay for all hours in excess of 40 hours in any one workweek.

6. Thornton brings this action on behalf of himself and similarly situated current and former Trainees and Technicians based in Ohio who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy Defendants' FLSA violations.

7. Thornton also brings this action on behalf of himself and current and former Technicians and Trainees who join this case to remedy violations of the Prompt Payment Act ("PPA"), Ohio Rev. Code § 2307.60, and other relevant state laws.

## Jurisdiction and Venue

8. Per 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Thornton's FLSA claims.

9. This Court has supplemental jurisdiction over Plaintiff's Ohio state law claims under 28 U.S.C. § 1367.

10. Defendants are registered to do business in the State of Ohio and has appointed a registered agent to accept service of process on its behalf in Ohio.

11. This Court has personal jurisdiction over Defendant because Defendant has consented to the Court's jurisdiction.

12. Venue in this Court is proper under 28 U.S.C. § 1391(b) because Plaintiff resided in this district and a substantial part of the events giving rise to the claim herein occurred in this district.

## PARTIES

**Plaintiff**

**Darryl Thornton**

13. Plaintiff Darryl Thornton was a resident of Ohio during his employment with Defendant.

14. Thornton was an "employee" of the Defendants as defined in the FLSA and the PPA.

15. Thornton has given written consent to join this action.

**Defendants**

16. Thornton seeks to hold liable any individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons who act directly or indirectly in the interest of Valor Technical Cleaning, LLC and/or the Valor Technical Cleaning, LLC business and brand in the interest of Valor Technical Cleaning, LLC in relation to any employee. Discovery is likely to reveal the identities of all of the individuals and entities that make up Thornton's and similarly situated employees' "employer" under the FLSA and state law.

17. Defendant is a Colorado limited liability company authorized to do business under the laws of the state of Ohio, with its principal place of business at 8000 S. Chester Street, Suite 585, Centennial, CO 80112.

18. Upon information and belief, Defendant has locations established across the lower 48 states.

19. Defendant is the entity that appears on Thornton's paystubs for work he completed for Defendants.

20. Upon information and belief, Defendant applies or causes to be applied substantially the same employment policies, practices, and procedures to all Technicians and Trainees at all its locations, including policies, practices, and procedures relating to payment of wages for Trainees and Technicians.

21. Defendant has direct and indirect control of the terms and conditions of Thornton's work and the work of similarly situated employees.

22. At all relevant times, Defendant maintains control, oversight, and direction over Thornton and similarly situated Trainees and Technicians, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

23. Defendant is an "employer" of Thornton and similarly situated Trainees and Technicians as that term is defined by the FLSA.

24. At all relevant times, Defendant has been and continues to be an "enterprise engaged in commerce" within the meaning of the phrase as used in the FLSA.

25. Defendant is an "employer" of Thornton and similarly situated Trainees and Technicians as that term is defined by the PPA.

26. Defendant's gross revenue exceeds $500,000 per year.

27. Upon information and belief, Defendant owns, operates, and controls other entities and/or corporations that also comprise part of Defendant's enterprise and qualify as "employers" of Thornton and the Trainees and Technicians as that term is defined by the FLSA.

28. Upon information and belief, there are other entities within Defendant's enterprise who qualify as "employers" to a number of members of the putative FLSA collective class.

29. The identities of these additional defendants should be revealed as discovery progresses and can be named at that time.

30. Upon information and belief, there are individuals who also qualify as "employers" of Thornton and the Trainees and Technicians at Defendant as the FLSA defines that term.

31. Upon information and belief, Chief Executive Officer Benn Pitts may qualify as an "employer" of Thornton and the Trainees and Technicians as that term is defined by the FLSA and Ohio law.

32. The identities of these additional defendants should be revealed as discovery progresses and can be named at that time.

## FACTS

### Factual Allegations Related to Thornton and Similarly-Situated Employees

33. During all relevant times, Defendant provides professional biohazard remediation and technical cleaning services across the United States.

34. Defendant's technical cleaning services include unattended death, decomposition, homicide, suicide, hazmat & biohazard, crime scene, hoarding, unattended death, and blood cleanup.

35. Defendant trains its employees to perform the technical cleaning work that Defendant provides to its customers.

36. Defendant provides technical cleaning services to customers across the country.

37. Thornton, and the similarly situated persons Thornton seeks to represent, are current and former Trainees and Technicians employed by Defendant in Ohio.

38. To provide services across the county, Trainees and Technicians are required to travel away from their home and often spend days at a time at locations away from their home.

**Trainees**

39. During their employment as Trainees, the Trainees are required to shadow and work alongside a Technician employed by Defendant until the Trainee is experienced enough to perform the role of Technician independently.

40. Defendants classify Trainees as "independent contractors" exempt from the overtime requirements of the FLSA.

41. Trainees regularly work in excess of 40 hours per week, sometimes working in excess of eighty hours per week.

42. Trainees are paid $35 per hour for all hours worked, including hours worked over 40 in a given workweek.

43. Trainees regularly travelled away from home, either by vehicle or by air, to get to the jobsite the were instructed to report to.

44. Defendant paid Trainees based off of the Trainee's self-reported estimation of the number of hours spent at a jobsite during the pay period.

45. Trainees were not paid for time spent traveling over the road to get to each jobsite.

46. Defendant provides Trainees with a customer address to report to for work.

47. Defendant instructs Trainee as to where and when they should report to jobsites.

48. Defendant's Technician employee instructs Trainees on how to perform the work, and the Trainee must follow those instructions.

49. Defendant provides or pays for the tools, equipment, and materials needed for the work performed by Trainees.

50. Defendant pays for the Trainees travel costs, such as the cost of airplane tickets and lodging.

51. Defendant controls the services Trainees perform for the customers.

52. Trainees are not required to have prior training in technical cleaning, specialized knowledge of technical cleaning, or specialized education.

53. Defendant controls Trainees' working conditions.

54. At all relevant times, Defendant has direct or indirect control over the terms and conditions of the Trainees' work.

55. At all relevant times, Defendant possessed the authority to control the terms and conditions of the Trainees, employment and Defendant exercised that authority.

56. Defendant suffered or permitted Thornton and the Trainees to work.

57. Defendant misclassified Trainees as independent contractors instead of as employees.

58. Defendant failed to pay overtime premiums based on the Trainees "regular rate" as that term is defined by the FLSA and Ohio law to Thornton and the Trainees.

59. Defendant failed to pay Thornton and the Trainees for all hours worked.

**Technicians**

60. After completing training, employees become Technicians.

61. Defendant classifies Technicians as W2 employees.

62. Technicians regularly work in excess of 40 hours per week, sometimes working in excess of eighty hours per week.

63. Technicians regularly travelled away from home, either by vehicle or by air, to get to the jobsite they were instructed to report to.

64. Defendant did not track the hours Technicians worked at any time prior to January 1, 2025.

65. Defendant did not track the hours Technicians spent travelling over-the-road at any time prior to January 1, 2025.

66. Defendant did not pay overtime premiums based on the Technicians' "regular rate" as that term is defined by the FLSA and Ohio law for any hours worked over forty in a given workweek at any time prior to January 1, 2025.

67. Defendant provides locations for Technicians to report to for their jobsite.

68. Technicians travel to customer locations, provided to them by Defendant, to evaluate the jobsite.

69. If Defendant is awarded the job by the customer, the Technician performs cleaning and restoration services at the jobsite.

70. Technicians often make trips to local hardware and other supply stores to gather supplies needed for the cleaning and restoration services.

71. Technicians document the work performed and take photographs of the jobsites.

72. Upon completion of the cleaning and restoration job, Technicians are required to upload those documents and photographs to Defendant's software system.

73. Uploading documents and photographs to Defendant's software system requires the Technician to be connected to Wi-Fi and to monitor upload progress.

74. Technicians are paid a set salary, regardless of the number of hours they work each week.

75. In addition to their salary, Defendant pays bonuses for each job completed.

76. The amount of bonus paid to Technicians varies depending on when and where the job is performed.

77. For example, if a jobsite requires a Technician to travel four or more hours away from their home, Defendant pays Technicians a $400 bonus for that job.

78. Prior to January of 2025, Defendants did not have a timeclock system that tracked the hours worked by Trainees and Technicians.

79. All Technicians employed at Defendant over the last three years performed essentially the same job duties.

80. Beginning in January 2025, Defendant began tracking the hours worked by Thornton and similarly situated Trainees and Technicians.

81. Beginning in January 2025, Defendant began paying Thornton and similarly situated Operations/Travel Technicians additional remuneration for hours worked over 40 hours in a given workweek and over 12 hours in a given day.

82. Upon information and belief, Defendant's overtime premium payments were not based on Thornton's and similarly situated Operations/Travel Technicians "regular rate" as defined by the FLSA and its implementing regulations.

83. Defendant deprived the Technicians of overtime wages guaranteed to them by the FLSA and Ohio law.

**Plaintiff's Individual Factual Allegations**

84. Defendant hired Thornton to work as a Trainee in December 2023.

85. As a Trainee, Thornton was classified as an independent contractor.

86. As a Trainee, Thornton generally worked 80 hours per week.

87. As a Trainee, Thornton shadowed and worked alongside a Technician employed by Defendant that directed where and when he would work.

88. As a Trainee, Thornton was required to perform cleaning and restoration in the manner directed by Defendant.

89. As a Trainee, Thornton was provided with instructions and demonstrations by a Technician regarding how to perform the work he was required to perform.

90. As a Trainee, Defendant directed where and when Thornton would work.

91. As a Trainee, Thornton was expected to work alongside one of Defendant's Technicians until he was ready to work independently as a Technician.

92. As a Trainee, Thornton did not have specialized education, training, or skills in the services provided to Defendant's customers.

93. As a Trainee, Thornton performed the work that Defendant is in the business of providing to its customers.

94. As a Trainee, Thornton traveled to various worksites all over the United States from his home in Ohio.

95. As a Trainee, Thornton was paid $35 per hour for all hours worked at a jobsite regardless of the number of hours he worked.

96. To determine how many hours to pay Thornton for, Defendant relied on the Technician training him to report the number of hours Thornton spent working at a jobsite.

97. As a Trainee, Thornton was not paid for any hours he spent travelling over-the-road.

98. As a Trainee, Defendant paid for Thornton's travel expenses and meals while working over-the-road but did not pay him for time spent traveling.

99. As a Trainee, Defendant paid Thornton on a bi-weekly basis by mailing a check to his home address.

100. Thornton worked as a Technician for Defendant from approximately December 2023 through April 2025.

101. As a Technician, Thornton traveled to various worksites all over the United States from his home in Ohio.

102. Thornton generally worked 60-80 hours per workweek as a Technician.

103. Thornton's hours worked were not tracked by Defendant in any time keeping system prior to January of 2025.

104. Prior to January 2025, Defendant paid Thornton on an annual salary basis of $75,000, which was paid to him on a bi-weekly basis.

105. In addition to his annual salary, Defendant paid Thornton a "bonus" payment for each job completed.

106. For jobs that required at least 4 hours of travel, Thornton was paid a $400 "bonus" payment.

107. For jobs that were performed during the company's normal business hours of Monday-Friday, Thornton was paid a $75 "bonus".

108. Prior to January 2025, Defendant did not compensate Thornton at the rate of one-half times his "regular rate" for all hours over 40 in any workweek.

109. Beginning in January 2025, Thornton began receiving overtime payments for hours worked over 40 and for any days in which he worked more than 12 hours, but his overtime rate was not based on his "regular rate" of pay as that term is defined by the FLSA and its implementing regulations.

110. Instead of paying Thornton overtime premiums based on his "regular rate" of pay, Defendant paid Thornton a set $25 hourly premium for overtime hours. This was less than one-and-a-half times his "regular rate."

111. Part of Thornton's job required him to upload photographs of the site serviced, which would often require hours of attending to his computer.

112. Towards the end of his employment, Defendant limited the number of hours it would pay for Thornton to upload photographs to two hours and refused to pay Thornton for the additional time it actually took him to complete his task.

113. Defendant failed to pay Thornton overtime wages as required by law.

## Collective Action Allegations

114. Thornton brings the First Count on behalf of himself and a class of persons consisting of:

> All similarly situated current and former Trainees and Technicians employed at the Defendant in the state of Ohio during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "Collective").

115. At all relevant times, Thornton and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendant's decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Thornton and the FLSA Collective overtime wages for all hours worked in excess of 40 hours in one workweek.

116. At all relevant times, Thornton and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendant's decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Thornton and the FLSA Collective wages at the correct overtime rate for all hours worked in excess of 40 hours in one workweek.

117. Thornton's claims are essentially the same as those of the FLSA Collective.

118. Defendant's unlawful conduct is pursuant to a company policy or practice.

119. Defendant is aware or should have been aware that federal law required them to pay employees overtime wages for all hours worked in excess of 40 hours in one workweek. Despite this, Defendant chose to underpay overtime wages as required by law.

120. Moreover, after seemingly becoming aware of a possible violation, Defendant took no steps to remedy the prior violation.

121. Defendant's unlawful conduct has been widespread, repeated, and consistent.

122. The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

123. The FLSA Collective members are readily identifiable and ascertainable.

124. In recognition of the services Thornton has rendered and will continue to render to the FLSA Collective, Thornton will request payment of a service award upon resolution of this action.

## CAUSES OF ACTION

### Count 1
### Failure to Pay Overtime Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

125. Thornton restates and incorporates the foregoing allegations as if fully rewritten herein.

126. Thornton and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than 1.5x their regular rate of wages for all hours worked in excess of 40 hours in any single workweek.

127. Defendant did not pay Thornton and the FLSA Collective overtime wages for all hours worked in excess of 40 hours per workweek.

128. By the acts and conduct described above, Defendant willfully violated the provisions of the FLSA and disregarded the rights of Thornton and the FLSA Collective. Thornton

and the FLSA Collective have been damaged by Defendant's willful failure to pay overtime wages as required by law.

129. As a result of Defendant's willful violations, Thornton and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees under the FLSA.

**Count 2**
**Untimely Payment of Wages – O.R.C. § 4113.15**
**(On Behalf of Plaintiff and Any Similarly-Situated Individual Who Joins this Action)**

130. Thornton restates and incorporates the foregoing allegations as if fully rewritten herein.

131. During all relevant times, Defendant was and is covered by O.R.C. § 4113.15, and Thornton and similarly-situated employees who join this action were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

132. O.R.C. § 4113.15(A) requires that Defendant pay Thornton and and similarly-situated employees who join this action all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

133. Federal and Ohio wage and hour law requires Defendant to pay nonexempt employees 1.5x the employee's wage rate for all hours worked in excess of 40 hours in one workweek. Ohio Rev. Code § 4111.03.

134. By failing to pay Thornton and similarly-situated employees who join this action all wages due to them under the FLSA and Ohio wage and hour laws, Defendant has violated the Ohio Prompt Pay Act.

135. Plaintiff's and similarly-situated employees' unpaid wages have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

136. Thornton's and similarly-situated employees' entitlement to the wages sought herein is and has been undisputed, or, if nominally disputed, there is no reasonable basis for such a dispute.

137. As a result of Defendant's willful violation, Thornton and similarly-situated employees who join this action are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**Count 3**
**Damages Pursuant to O.R.C. § 2307.60**
**(On Behalf of Plaintiff and Any Similarly Situated Individual Who Joins This Action)**

138. Thornton restates and incorporates the foregoing allegations as if fully rewritten herein.

139. A willful violation of the FLSA is a criminal act. 29 U.S.C. § 216(a).

140. A violation of the PPA is a criminal act. Ohio Rev. Code § 4113.99.

141. By their acts and omissions described herein, Defendant has willfully violated the FLSA and violated the PPA, and Thornton and the Rule 23 Class have been injured as a result.

142. O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

143. As a result of Defendant's willful violations of the FLSA, Thornton and the Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**WHEREFORE,** Plaintiff Darryl Thornton prays for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Thornton and his counsel to represent the collective action members.

B. Unpaid wages and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C. An award of unpaid overtime wages and untimely paid wages due under the FLSA, the PPA, and any similar state law.

D. Liquidated damages under the FLSA and the PPA.

E. Punitive damages under O.R.C. § 2307.60.

F. An award of prejudgment and post-judgment interest.

G. An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

H. Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Emily Hubbard*
Andrew R. Biller
Andrew P. Kimble
Emily A. Hubbard
BILLER & KIMBLE, LLC

8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
513-202-0710 (Phone)
614-340-4620 (Fax)
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*ehubbard@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

## JURY DEMAND

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

*/s/ Emily Hubbard*
Emily Hubbard